**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JEFFERY MICKENS**                                                                                     **PLAINTIFF**

**v.**                                            **NO. 4:04-CV-00319 GTE**

**CORRECTIONAL MEDICAL SERVICES, INC.**                                     **DEFENDANT**

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's response

thereto.  For the reasons stated below, the Court finds that Defendant is entitled to judgment as a

matter of law as to Plaintiff's Title VII claims and state law claims.  The Court reserves ruling,

however, on Plaintiff's First Amendment claims, solely to permit Plaintiff to show cause why

such claim should not also be dismissed.

## FACTS WITHOUT MATERIAL CONTROVERSY

The Defendant Correctional Medical Services ("CMS") provides healthcare services and

medical staffing to jails and prisons throughout the United States.  Pursuant to a contract with the

Arkansas Department of Corrections, CMS provides its services to many of the jails and prisons

in Arkansas.

Plaintiff Jeffrey Mickens is an African-American male.  Plaintiff claims that he submitted

an application to the Pine Bluff Diagnostic Unit in June 2003, applying for a position as a

Licensed Practical Nurse (LPN) or Health Services Administrator with CMS.  CMS has no

record of receiving an application from Mickens in June of 2003, but at some point in June of

2003, Mickens was informed that CMS had no available Health Services Administrator

positions.

On August 20, 2003, Plaintiff submitted another application for employment with CMS,

indicating his interest in an LPN position.[1]  On that application, Plaintiff represented that he had

never been convicted of a crime.  In fact, Plaintiff had four prior convictions, including: (1) a

1981 conviction for terroristic threatening, arising from planting a fake bomb at McDonald's,

Plaintiff's former employer; (2) a December 1989 conviction for violating the Controlled

Substance Act for possession of crack cocaine; (3) a 1989 conviction for theft by receiving; and

(4) a 1992 conviction for aggravated assault.  In 2000, Arkansas Governor Mike Huckabee

granted Plaintiff a pardon for his prior convictions.

After interviewing Plaintiff for the LPN position, CMS hired Plaintiff to work as an LPN

on a PRN or "as needed" basis.  Employees who are hired by CMS to work PRN are assigned to

a home unit, but may work at other units if there is a need for assistance in those units.  Plaintiff

begin working with CMS on August 28, 2003.  At that time, Plaintiff signed a "PRN Working

Agreement."  The Agreement states in pertinent part:

> 2.      CMS agrees to employ in the above capacity as the need arises for
> temporary services.  My employment status with CMS is defined as
> Irregular/Temporary.  I understand that I am not eligible for benefits with
> the exception of retirement benefits.
>
> 3.      **Nothing in this agreement shall be construed as a guarantee or
> promise of any minimum hours to be worked by the employee or
> offered by CMS**.
>                                        . . .
> 8.      Given the unique nature of my employment relationship with CMS, I
> understand and agree that the utilization or discontinuance of my services
> will be at the sole discretion of the CMS manager, and not subject to the
> CMS Corrective Action policy.

---

[1]  Although Plaintiff has a Bachelor's of Science in Nursing and has sat for the required
examination for licensure as a Registered Nurse, he has not been able to pass the examination.

(CMS 85, attached as part of Exhibit 2 (Mickens' Deposition) to CMS' motion)(emphasis added).  Plaintiff signed this one-page document and dated it August 28, 2003.

Plaintiff also signed an acknowledgment that he had received a copy of CMS's employee handbook – the CMS Employee Success Guide – upon beginning work, but he now claims that he never received a copy of this handbook.  (CMS 77, Exhibit 2 to CMS' motion).

Pursuant to CMS policy as set forth in the employee handbook, all CMS employees are required to serve a three-month probationary period and are not eligible for promotion or transfer until this probationary period is completed.

Plaintiff was a probationary employee from August 28, 2003, his date of hire, until November 5, 2003, after which CMS no longer used the Plaintiff's services.  Plaintiff claims that he was not formally terminated and was told in November of 2003 only that he would not be scheduled for work.

The decision not to use Plaintiff's LPN services on a PRN basis was made by CMS Regional Manager George Wilson.  Mr. Wilson made this decision after learning of Plaintiff's criminal history following a routine background check.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds.   Fed. R. Civ. P. 56.  The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will

---

[2] CMS was unaware of Plaintiff's criminal history when it hired Plaintiff because Plaintiff failed to disclose it on his application.  CMS' contract with the Arkansas Department of Corrections required a background check, the results of which revealed Plaintiff's prior criminal history.  The ADC determined that Plaintiff's criminal history did not prohibit him from working in their facility, but CMS chose to apply a stricter standard.

be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The burden is on the moving party to show that the record does not disclose a genuine dispute on a material fact. *Counts v. MK-Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988). To survive a motion for summary judgment, the nonmoving party must "substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted).

## DISCUSSION

At the outset, the Court rejects Plaintiff's suggestion that there is a material factual or legal distinction between being "terminated" and not being scheduled for any further PRN work after November 5, 2003. For example, in responding to CMS' Statement of Material Facts, Plaintiff argues that he "has never been formally terminated by CMS yet has not worked at all for them since November 5, 2003." (Pl.'s Statement of Material Facts, Response to ¶14). As Plaintiff acknowledges, he was hired for a PRN or "as needed" position. Whether Plaintiff was terminated or whether CMS simply failed to schedule him for work after November 5, 2003 – the effect is the same. The Plaintiff's services were no longer utilized by CMS after November 5, 2003. Thus, Plaintiff's contention that he was "never formally terminated" has no legal significance here.[3]

---

[3] This contention is also inconsistent with Plaintiff's allegation that he was discharged in violation of Title VII.

Likewise, Plaintiff's contention that he was "enticed to leave his previous job with promises of 'as needed' work that would always be in excess of 40 per week" fails to state a claim for detrimental reliance on the facts of this case.  (Pl.'s Brief at p. 2)   First, Plaintiff failed to plead  this theory, which is an alternative theory to a breach of contract theory, but mentions it for the first time in his brief opposing summary judgment.  Second, assuming such a theory had been pled, it would fail as a matter of law.  Reliance, to be legally cognizable, has to be reasonable.  Plaintiff specifically acknowledged signing a written agreement which provided that "there was no guarantee or promise of any minimum hour" to be worked or offered by CMS. (Pl.'s Statement of Material Facts, Response to ¶ 17).  Plaintiff could not have reasonably relied on the prior oral promise he now alleges in view of subsequently being advised in writing that CMS was not guaranteeing any minimum number of hours.   Promissory estoppel is not to be used as a vehicle to engraft a promise on a contract that differs from the written terms of the contract.  *See, e.g., Halls Ferry Inv., Inc. v. Smith*, 985 S.W.2d 848, 853 (Mo. Ct. App. 1998).[4] Finally, promissory estoppel is an alternative theory which is not available when an actual contract exists.  *See MDH Builders, Inc. v. Nabholz Const. Corp.*, 70 Ark. App. 284, 290, 17 S.W.3d 97, 101 (Ark. App. 2000).  Because Plaintiff and CMS entered into a contract for employment, promissory estoppel is unavailable to vary the agreed upon terms of employment. Plaintiff's breach of contract theory is discussed (and rejected) below.

### A.      **Federal Claims**

Plaintiff contends that the Defendant subjected him to four adverse employment actions that give rise to claims under Title VII.  First, Plaintiff contends that he was denied the

---

[4] The Court does not find an Arkansas case addressing this point, but predicts that the Arkansas Supreme Court, if confronted with this issue, would so hold.

opportunity to interview for the position of Health Services Administrator in June of 2003, prior to beginning employment with CMS.  Second, Plaintiff contends that after he was hired as an LPN, he was again denied the opportunity to interview for the position of Health Services Administrator.  Third, Plaintiff contends that he was terminated by CMS.   Fourth, Plaintiff contends that his termination was in retaliation for complaining of racial bias in hiring. The failure to hire, termination and retaliation contentions are discussed separately.

### (1)    Failure to Hire Claim

With regard to Plaintiff's contention that Defendant failed to hire him for the position of Health Services Administrator, Plaintiff must demonstrate as part of his prima facie case that: (1) he was a member of a protected group; (2) he was qualified and applied for a position for which the employer was seeking applicants; (3) he was not hired; and (4) similarly situated employees, not part of the protected group, were hired instead. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957-58 (8th Cir. 1995).

There is an issue of fact as to whether Plaintiff even applied for a Health Services Administrator position as he alleges, as CMS has no record of such application.  Assuming, however, that such application was made, the record evidence demonstrates that Plaintiff was not qualified for the position.

CMS has presented evidence that the position of Health Services Administrator requires previous healthcare management experience and that a Registered Nurse is required in some instances (where there is no Director of Nursing at the facility) and preferred in all instances. Plaintiff has no prior healthcare management experience.  Plaintiff is not a Registered Nurse. Thus, Plaintiff did not meet the minimum requirements for the position.

Additionally, with regard to Plaintiff's alleged second attempt to obtain this position,

which occurred after CMS hired him as an LPN, Plaintiff was not qualified for an additional

reason.  Plaintiff was a probationary employee during his entire tenure with CMS.  CMS policy

requires that employees are not eligible for promotion or transfer during their three-month

probationary period.   In the absence of evidence demonstrating that he was qualified for the

Health Services Administrator position, Plaintiff cannot prove a prima facie case of

discrimination.  CMS is entitled to judgment as a matter of law with regard to Plaintiff's two

failure to hire claims.

### (2)     Termination Claim

With regard to his claim that Defendant terminated him because of his race, Plaintiff must

prove:  "(i) that he belongs to a protected class; (ii) that he was qualified for the job; (iii) that he

was discharged; (iv) that, after his discharge, he was replaced by a person with similar

qualifications." *Putnam v. Unity Health Sys.*, 348 F.3d 732, 736 (8ᵗʰ Cir. 2003).

Once this prima facie case is made out, the burden then shifts to the employer to identify

a legitimate reason for the adverse employment action. *See McDonnell Douglas Corp. v. Green,*

411 U.S. 792, 802 (1973). The burden then shifts back to the employee to show that the

articulated reason was a pretext. *See id.* at 804.

In every discrimination case:

the ultimate question is whether the employer intentionally discriminated, and proof that
the employer's proffered reason is unpersuasive, or even obviously contrived, does not
necessarily establish that the plaintiff's proffered reason ... is correct. In other words, [i]t
is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's
explanation of intentional discrimination.

*See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146-46 (2000)(internal quotes

and citations omitted).   Thus, Plaintiff  bears the burden of coming forward with sufficient

evidence to show, by a preponderance of the evidence, that CMS terminated him because of his

race.

Defendant CMS contends that it terminated Plaintiff after it learned of his prior felony convictions pursuant to a routine background investigation.  Although Arkansas' Governor had pardoned most of Plaintiff's crimes, George Wilson, one of CMS' regional vice-presidents, determined that CMS should not employ Plaintiff permanently due to his extensive criminal history and the nature of the convictions.  This decision effectively terminated Plaintiff's employment.

While Plaintiff may disagree with Defendant's decision, to prevail on his race discrimination claim, he must demonstrate that a "discriminatory animus lies behind the defendants' neutral explanations."  *Roxas v. Presentation Coll.*, 90 F.3d 310, 316 (8th Cir. 1996).  Plaintiff has failed to do so.  Plaintiff has failed to come forward with any evidence to show that Defendant treated any other similarly situated employee more favorably.  Indeed, he candidly admits that "he knows of no other similarly situated employee."  (Pl.'s brief at p. 4).

Nor has Plaintiff produced any other evidence from which racial animus could be inferred by the jury.  Plaintiff argues that the circumstances and timeline of when Plaintiff was denied work "clearly establish that his pardoned criminal record could not be the real reason for the actions" of  CMS.  (Pl.'s brief at p. 4).  The only "circumstance" Plaintiff mentions is that his pardon predated his hiring and he worked for over two months for CMS before they let him go.

At best, Plaintiff's theory appears to be that Defendant treated him unfairly in refusing to permit him continue working despite his prior criminal convictions,  given the fact that the Governor had granted him a pardon.  This contention will not support a claim that Defendant violated federal employment laws.  The law is well established that "[a] company's exercise of its business judgment is not a proper subject for judicial oversight."  *Regal v. K-Mart Corp.*, 190

- 8 -

F.3d 876, 880 (8ᵗʰ Cir. 1999)(internal citations and quotations omitted).

No reasonable jury could find on this evidentiary record that CMS discharged Plaintiff because of his race.

### (3)    Retaliation

Plaintiff contends that he "complained publicly and to corporate headquarters about these positions [for Health Services Administrator] not being posted and expressed his opinion that racial bias was possibly the reason for these practices." (Complaint at ¶ 15). Plaintiff further contends that Defendant was motivated by "a desire to retaliate against him for the exercise of his First Amendment right to speak out about racial matters of public concern." (Complaint at ¶ 18).

The Court concludes that Defendant is entitled to judgment as a matter of law with respect to these claims.  Plaintiff's argument is basically that the temporal element – the fact that he made complaints in September of 2003 and was never scheduled to work after November 5, 2003, entitles him to argue his case to the jury.  Plaintiff is mistaken.  While close proximity in time between an allegation of racial bias and an adverse employment action will usually enable a Title VII plaintiff alleging retaliation to establish a prima facie case, "timing on its own is . . . not sufficient to show that an employer's non-discriminatory [or non-retaliatory] reason for [an adverse employment action] is merely pretext." *Sherman v. Runyon*, 235 F.3d 406, 410 (8ᵗʰ Cir. 2000); *see also Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8ᵗʰ Cir. 2002)("[g]enerally, more than a temporal connection . . . is required to present a genuine factual issue on retaliation")(internal quotation omitted).  In other words, "[a]n employee's attempt to prove pretext . . . requires more substantial evidence [than it takes to make a prima facie case], . . . because unlike evidence establishing a prima facie case, evidence of pretext . . . [and retaliation]

- 9 -

is viewed in light of the employer's justification." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002)(omitting internal cite and quotation).

Plaintiff has failed to come forward with any evidence from which a jury could find that the reason given for terminating him – his substantial prior criminal record – was a pretext to retaliate against him for prior complaints about racial bias.

### (4)     First Amendment Retaliation

As to Plaintiff's First Amendment retaliation theory, CMS failed to address this issue in its Motion for Summary Judgment.  The Court, however, *sua sponte*, raises the issue because it appears from the present record unlikely that Plaintiff can create an issue of material fact on this claim to submit to the jury.  Because the Plaintiff arguably has not had adequate notice of the inadequacy of this claim, the Court will permit Plaintiff to come forward with any further evidence or legal argument it wishes to present in further support of this claim. *See Am. Red Cross v. Community Blood Ctr.,* 257 F.3d 859, 863 (8th Cir. 2001)(A district court may grant summary judgment *sua sponte* if the nonmovant has been notified and given an opportunity to respond).

The same weaknesses in Plaintiff's Title VII retaliation claim also present hurdles to Plaintiff's First Amendment claim.   That is, a temporal connection alone between protected speech and termination will not suffice to create a submissible jury issue of First Amendment retaliation.  But, Plaintiff faces other obstacles – obstacles which it appears are outcome determinative  –  before even reaching the merits of a First Amendment claim.

First, Plaintiff must first convince the Court that CMS, a private party, acted with sufficient state action, due to its connection with or association with the Arkansas Department of Corrections ("ADC"), such that it may even be held liable for violating the First Amendment.

*See, e.g., Dossett v. First State Bank*, 399 F.3d 940 (8th Cir. 2005)(private employer held liable

for conspiring with school district officials to violate private employee's right to freedom of

speech under the First Amendment by terminating her employment in retaliation for her speaking

about tax issues at school board meeting).  Neither party has briefed this issue.  It appears,

however, that CMS made the decision to terminate Plaintiff independently of the ADC and, in

fact, applied a stricter standard upon learning of Plaintiff's prior convictions than the ADC.

Second, assuming the Plaintiff could demonstrate that CMS is a state actor subject to the First

Amendment, Plaintiff would then have to prove that Plaintiff's speech could be "fairly

characterized as constituting speech on a matter of public concern."  *Connnick v. Myers*, 461

U.S. 138 (1983).  If so, Plaintiff's right to comment on matters of public concern must next be

balanced with CMS' interest in "promoting the efficiency of the public services it performs

through its employees."  *Pickering v. Board of Education*, 391 U.S. 563 (1963).  Both parts of

the *Connick -Pickering* inquiry are questions of law for the court to decide.  *Connick*, 461 U.S. at

148 n. 7.

Plaintiff states that he "complained publicly and to corporate headquarters" expressing

"his opinion that racial bias was possibly the reason" for CMS' practice about failing to post the

positions of Health Services Administrator.  (Complaint at ¶ 15).  The Court has serious concerns

here over whether Plaintiff's complaints rise to the level of addressing a matter of public

concern.

An employee's speech touches upon a matter of public concern when it is a "matter of

political, social, or other concern to the community" at large.  *Connick*, 461 U.S. at 146-47.  As

the Supreme Court emphasized in *Connick,* speech does not touch upon a matter of public

concern when the employee speaks "upon matters only of personal interest." *Id.* at 147.   In

- 11 -

determining whether speech touches upon a matter of public concern, it is necessary to examine

the content, form, and context of the speech, given the record as a whole. *Id.* at 147-48.

"The focus is on the role that the employee has assumed in advancing the particular

expressions: that of a concerned public citizen, informing the public that the state institution is

not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or

nonfeasance; or merely as an employee, concerned only with internal policies or practices which

are of relevance only to the employees of that institution." *Kincade v. City of Blue Springs,* 64

F.3d 389, 396 (8th Cir.1995).  When a public employee's speech is purely job-related, her speech

will not be deemed a matter of public concern. *Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir.

1999).  "Unless the employee is speaking as a concerned citizen, and not just as an employee,

the speech does not fall under the protection of the First Amendment."  Id.  It is not enough that

the topic of an employee's speech is one in which the public might have an interest. *Morgan v.*

*Ford*, 6 F.3d 750, 754 (11th Cir. 1993).   Thus, to the extent Plaintiff spoke out only to further his

own private interests, such speech enjoys no First Amendment protection.

The Court has grave doubts about Plaintiff's First Amendment claims.  Out of concerns

for procedural fairness, the Court reserves a final ruling on this issue until the Plaintiff has an

opportunity to show cause why his First Amendment retaliation claim should not also be

dismissed.  Plaintiff shall respond in writing not later than **August 15, 2005** if he wishes to

present evidence and legal argument further support of these claims.[5]  If Plaintiff elects to submit

anything further in support of this claim, Defendant shall have ten (10) days thereafter to respond

---

[5] If Plaintiff elects to argue this claim further, he shall address all of the issues raised by
the Court, specifically, (1) why CMS should be deemed a state actor; (2) both parts of the
*Connick -Pickering* inquiry; and (3) how Plaintiff can prove that the real reason for CMS' action
was retaliation for Plaintiff speaking out on a matter of public concern.

thereto.  **Plaintiff is hereby given notice that if he fails to respond not later than August 15, 2005, his sole remaining claim will be dismissed and a final Judgment will be entered dismissing his Complaint.**

### (B)      State law claims

### (1)      Breach of Contract

Plaintiff contends that Defendant violated the parties' agreement that Plaintiff would be permitted to work a minimum of 40 hours per week.  There is no evidence that such an agreement was made, other than Plaintiff's testimony.  Moreover, such a verbal agreement would conflict directly with the written agreement Plaintiff signed when he started work, specifically advising that CMS could not guarantee or promise any minimum number of hours to be worked. Finally, it appears that in fact Plaintiff actually worked forty hours per week during the entire time he was employed by CMS.  (See Pl.'s Statement of Material Facts, response to ¶ 14). Apparently, Plaintiff's theory is that CMS violated the contract by failing to permit him to work forty hours per week after his termination.  Such an argument is tantamount to contending that Plaintiff's termination on November 5, 2003, was somehow a contractual violation.  There is no merit to such a contention.  Not only was Plaintiff an at-will temporary employee who, by definition, could be terminated at any time, he was also a probationary employee, serving out a required three month probationary period at the time of his termination, the purpose of which was to determine whether Plaintiff was suited for the position.  CMS had the contractual right to cease using Plaintiff's services at any time, for any reason and it did.

Plaintiff has wholly failed to come forward with any evidence from which a reasonable fact-finder could conclude that CMS breached a contract with him.

### (2)   Intentional Infliction of Emotional Distress

The facts of this case will not support a finding that Defendant committed the tort of

intentional infliction of emotional distress. Summary judgment will be granted with respect to

said claim.

### CONCLUSION

For the reasons herein stated,

IT IS HEREBY ORDERED THAT the Defendant's Motion for Summary Judgment

(Docket No. 17) be, and it is hereby, GRANTED IN PART AND DENIED IN PART.  The Court

reserves final ruling on Plaintiff's First Amendment retaliation claim to provide Plaintiff with an

opportunity to show cause why his First Amendment retaliation claim should not also be

dismissed as a matter of law.  Plaintiff shall respond in writing not later than **August 15, 2005** if

he wishes to present evidence and legal argument further support of these claims.  If Plaintiff

elects to submit anything further in support of this claim, Defendant shall have ten (10) days

thereafter to respond thereto.

IT IS FURTHER ORDERED THAT Defendant's Motion to Compel (Docket No. 14) be,

and it is hereby, DENIED as MOOT.[6]

IT IS SO ORDERED this   2nd   day of August, 2005.

　　　　　　　　　　　　　　　____/s/Garnett Thomas Eisele_____
　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

---

[6] Defendant may renew this motion in the event that this entire case is not disposed of
pursuant to Fed. R. Civ. P. 56.